[No. 896.]

JAMES HUNTER & CO. ET AL., RESPONDENTS, v. TRUCKEE LODGE, No. 14, I. O. O. F. ET AL., APPELLANTS.

MOTION FOR NEW TRIAL—WAIVER OF NOTICE—TIME TO MOVE FOR NEW TRIAL.—Service of a statement on appeal is a waiver of written notice of the filing of findings of the court, and in such a case a notice of intention to move for a new trial must be filed within ten days after the service of statement. (*Corbett* v. *Swift*, 6 Nev. 194, affirmed.)

MECHANICS' LIEN LAW—LIBERALLY CONSTRUED.—The lien law is to be liberally construed. A substantial compliance with its provisions is all that is required. (*Skyrme* v. *Occidental M. & M. Co.*, 8 Nev. 219, affirmed.)

IDEM—TIME FOR FILING NOTICE.—The lien claimant is only required by the statute to file his notice before the expiration of thirty days after the completion of the building.

IDEM—FORECLOSURE—RIGHTS OF INTERVENORS.—Intervenors are connected with the proceeding to foreclose plaintiffs' lien, by force of the statute, when the action is commenced and notice thereof is published. The liens may be proved without any formal intervention.

IDEM—ALTERATION OF RECORD—DESCRIPTION OF PREMISES.—M. and D. filed a notice of lien and described the premises as being in lot 9 in a certain block. After the notice was recorded, but before the time had elapsed for filing, they were permitted to change the number of the lot in the

notice and upon the record: *Held*, it appearing that no fraud was intended, and the notice otherwise containing a good description of the premises, that such alteration did not affect the validity of the notice.

PAYMENTS TO CONTRACTOR—MUST BE PLEAD BY DEFENDANT.—Before the defendant can avail himself of the fact, if it be a defense, that he had paid all that he agreed to pay, before notice of the claims of third parties, he must allege and prove the fact.

IDEM—NOT A DEFENSE—RIGHTS OF SUB-CONTRACTORS.—In construing the lien law (Stat. 1875, 122) the court, upon rehearing, *held*, that the legislature intended to give sub-contractors and material-men direct liens upon the premises for the value of their labor and materials, regardless of payments on the principal contract made prior to the time within which the law requires notice of their claims to be recorded.

CONSTRUCTION OF STATUTE ADOPTED FROM ANOTHER STATE—PRESUMPTION.— The rule that where a statute has received a judicial construction in another state, discussed: *Held*, that the decision of another state can not be presumed to be known to the legislature of this state, antecedent to its official publication.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts appear in the opinion.

*Robert M. Clarke*, for Appellants:

I. The alteration of Manning & Duck's notice was an unlawful act, Stat. 1871, 75, and could not confer any rights upon the claimants. It was a new notice and was never sworn to.

II. The liens were filed before the completion of the building. This was premature and unauthorized. (Stat. 1875, 122.)

III. Boyd & Courtois' notice of lien did not show that materials were used or furnished for the building. It should have been excluded. (*Houghton* v. *Blake*, 5 Cal. 240; *Bottomly* v. *Grace Church*, 2 Id. 90.)

IV. The lien claimants, other than plaintiff, did not comply with the law in bringing suits within six months. Their liens can not therefore bind the property. Commencing proceedings means commencing suits and issuing summons. (6 Nev. 290; 10 Cal. 240; 18 Ill. 318.) The filing of a petition for intervention is a superfluous act. (6 Nev. 291; 8 Id. 236; 14 Cal. 127.)

V. Our lien law was borrowed from California, Stat. Cal. 1867–8, 589, and unless the complaint shows that the owner of the building was indebted to the contractor when actual or constructive notice was given of his claim, it fails to state facts sufficient to constitute a cause of action. (49 Cal. 185; 51 Id. 423.)

VI. The presumption is that this law was adopted as interpreted by the supreme court of California. The question of actual knowledge or learning of the legislature is never considered when we seek to arrive at their intent in the construction of a law. Therefore, it is immaterial whether our legislature knew of the interpretation by the courts of California of the act in question previous to its adoption. If the rule shall prevail it must rest upon a legal presumption, whatever may be the reason for such presumption. The books lay down the rule in question, without any qualification as to the time of the construction or its publication. (Cooley Const. Law, 52; 2 Nev. 206; 5 Id. 24; 7 Id. 23; 8 Id. 320.) The highest tribunals of a country are presumed to have correctly understood their own laws, and having construed them, comity and prudence alike require the adopting state to take that construction as sound and correct. Hence results the duty of the law makers who adopt the law, if they desire to avoid the consequences of the rule, to provide in terms for an independent construction of the law. The true reason for the rule is found in the wants and necessities of the people of the state where a law is introduced. The law is passed because it is necessary. It takes effect immediately upon its passage. The wisest Solon is but an imperfect draughtsman of legislative enactments. To frame a perfect law upon any important subject, and one that will leave no room for construction, requires more skill, more wisdom and learning than is commonly attributed to our legislators. Most statutes are full of imperfections, yet the community must act upon them; men must regulate their most important concerns in conformity with them. In so doing, the law says they are entitled to have something whereby to guide their conduct. They have a right to rely upon rules of construction estab-

lished by the law of the land. If this be the true reason of the rule, it follows that it can not be affected by the publication of the decision in authentic form previous to the enactment of the law.

*Thomas E. Haydon,* for Respondents:

I. Appellants waived their right to move for a new trial by not acting upon their actual notice of the decision of the court. (6 Nev. 195.)

II. The mechanics' lien law must be liberally construed. (8 Nev. 236; 11 Id. 277.)

III. The description in Manning & Duck's lien was sufficient, without the alteration. (*Dickson* v. *Corbett,* 11 Nev. 277.)

IV. There is nothing in the lien law which requires any notice to the owners or that limits their liability to the contract price. The owner must give notice to the subcontractors that he will not be liable for any materials furnished or labor done by them, otherwise he is bound. (*Fuquay* v. *Stickney,* 41 Cal. 583; 49 Id. 357: *Henry* v. *Tilson,* 17 Vt. 479.) The case of *Renton* v. *Conley,* 49 Cal. 185, is ill considered, illogical and absurd. It is true when one state adopts a statute of another state, it adopts also the *known construction* of such statute in the state from which it is borrowed. The language of the books generally, is that where a statute has a *known construction,* resulting from a *uniform series* of judicial expositions, then it is adopted by the state borrowing with the construction *well settled* in the state from which borrowed. (*Campbell* v. *Quinlin,* 3 Scam. 288.) But courts do not always follow this rule when unsatisfied with the reasoning of such decisions. (*Milliken* v. *Sloat,* 1 Nev. 580; *Van Doren* v. *Tjader,* 1 Id. 394; *Galland* v. *Lewis,* 26 Cal. 46.)

*Boardman & Varian, and W. L. Knox,* also, for Respondents:

By the Court, BEATTY, C. J.:

This is an action under the mechanics' lien law of 1875 (Stat. 1875, p. 122). The plaintiffs and intervenors were

sub-contractors or material-men under Wood & Richards, the principal contractors for the erection of appellants' building. The judgment of the district court was in favor of the lien claimants, and the appeal is from the judgment and also from the order of the district court refusing a new trial.

The motion for a new trial, we think, was properly overruled upon the ground stated in the opinion of the district judge. The decree was entered October 13, 1876; on the eighteenth of October, appellant filed and served a statement on appeal, and its notice of intention to move for a new trial was not filed or served until more than ten days thereafter. On the principle decided in *Corbett* v. *Swift*, 6 Nev. 194, the service of the statement on appeal was a waiver of written notice of the filing of the findings of the court, and the notice of intention to move for a new trial not having been given within ten days thereafter was not in time. We shall therefore consider only those errors which are assigned in support of the appeal from the judgment.

1. The lien law provides, sec. 5, that every person claiming under it, except the original contractor, shall file a statement of his claim "within thirty days after the completion of the building." In this case all the notices of liens were filed before the completion of the building, and appellant claims that this was not a sufficient compliance with the law. We think it was. The law is to be liberally construed, and a substantial compliance with its provisions is all that is required. (*Skyrme* v. *Occidental Co.*, 8 Nev. 239.) The meaning of the statute, and all that it requires, is that the lien-claimant shall file his notice before the expiration of thirty days after the completion of the building, not that he must decide at his peril exactly when it is finished (a thing that it would often be impossible to do), and file his claim within the ensuing thirty days. There could have been no possible object in such a requirement, while the necessity of fixing a term within which liens of this character must be asserted is obvious. It may be true, as counsel contends, that a sub-contractor's claim is subordinate to that of the principal contractor, and that neither

can have any lien unless or until the building is completed. But if this were conceded it would not necessarily follow that a sub-contractor's notice of intention to claim a lien would be void if filed before his right was perfected by the completion of the principal contract. If both things are essential to his right of action it still makes no difference which is done first.

2. It is claimed that the intervenors in this case failed to commence proceedings in time. The statute provides, sec. 8, that no lien shall be binding for a longer period than six months after the same is filed "unless proceedings be commenced in a proper court within that time to enforce the same."

This action was commenced less than six months after the claims of intervenors were filed, and the plaintiffs caused the statutory notice to other claimants to be duly published. Each of the intervenors filed his petition of intervention in the case within six months after his claim was filed for record. But appellant contends that as these petitions were filed without the previous leave of the court they were wholly unauthorized, and consequently that the intervenors never connected themselves with the proceedings until the day of the trial, which was more than six months after their claims were recorded.

We think that, if it had been necessary for the intervenors to file petitions in order to connect themselves with the proceeding, they were authorized to do so without any order of court, for the statute gave them the absolute right to intervene. But we think the intervenors were connected with the proceeding by force of the statute from the moment the action was commenced and notice published by the plaintiffs. The action was a proceeding to enforce not only the lien of the plaintiffs but all the recorded liens. The holders of those liens not only had the right, but they were obliged to prove up their claims in this action, or be held to have waived them. This court has decided (*Elliott* v. *Ivers*, 6 Nev. 290), that in these cases a formal intervention is unnecessary, and that holders of recorded liens may prove them without having pleaded them, and such is the plain meaning of the

statute. It was intimated, without being decided, by the supreme court of California (*Mars* v. *McKay*, 14 Cal. 129), that a lienholder would be barred of his right of action if he failed to file an intervention before the lapse of six months after filing his lien for record; but we fail to see any good reason for so holding. If the commencement of the first action and the publication of the statutory notice gives the court jurisdiction to determine all the recorded claims, and if the determination of that action bars all claims not presented, it would seem that the holders of all such claims are necessarily connected with the proceeding from the moment of its institution. This construction of the statute can lead to no possible inconvenience, and is in accord not only with its letter but its spirit, which is to afford a simple, inexpensive and summary process for the enforcement of mechanics' liens.

3. Manning & Duck's notice of lien, as originally filed and recorded, described the premises to be charged as lot 9 in a certain block in Reno. Before the time for filing notice of their claim had elapsed they discovered that the true description of the premises was a fraction of lot 10 in the same block. The recorder permitted them to change the description in the notice already filed, and made a corresponding change in the book where it was recorded. It is claimed that it was error to admit proof of this claim. What would be the effect of such an alteration if there was no other sufficient description of the premises, or if it was fraudulently intended, it is unnecessary to decide. It is sufficient for this case to say that it appears from the statement that no fraud was intended by Manning & Duck, and that their notice contained a good description of the premises without reference to the number of the lot. It described the building of the defendant situated on a certain block, and it was proved that defendant had but one building on that block, which was well known. The court found that this description was sufficient to identify the premises to be charged with the lien, and that is all the statute requires. (Sec. 5.)

4. Objection was made to the proof of Boyd & Courtois'

claim on the ground that their petition of intervention did
not aver that the materials supplied by them were actually
used in the construction of the building of defendant.   The
objection was overruled, and this is assigned as error.   We
have already decided that no petitions of intervention were
necessary.   Boyd & Courtois had filed a sufficient notice
of their claim, which showed among other things that the
materials charged for had been used in the construction of
defendants' building.   Under that recorded notice they were
entitled to prove their claim without any additional pleading.

Finally. It·is contended that the district court erred in
charging defendants' building with liens in favor of sub-
contractors exceeding in amount the sum due to the original
contractors when defendants first had notice of the claims
of the sub-contractors.

It does not affirmatively appear from the record before
us that less was due to the principal contractors than the
amount of the liens; the pleadings, the findings of the
court and the statement on appeal are silent upon this
point.   The complaint alleges that the original contract
price of the building was nineteen thousand five hundred
dollars—more than the aggregate amount of the liens—but
fails to allege that any part thereof remained due at the
time the liens were filed.   There was no demurrer, and the
answer is a mere general denial of the complaint without
any affirmative allegations whatever.   It will thus be seen
that the proposition to be maintained by appellant under
this assignment is that the judgment is erroneous, because
it is not averred in the complaint that anything was due to
the principal contractors when notice was given of the
claims of the respondents.   This involves a construction of
the law and a question of pleading.   In order to pronounce
the judgment erroneous it must not only be held that under
the law there can be no lien for an amount greater than is
due from the owner of the building to the original con-
tractor, but also that a complaint which fails to allege that
anything was due when notice of the sub-contractor's claim
was given is so fatally defective that it will not support a
judgment in favor of the lien.

The case of *Renton* v. *Conley,* 49 Cal. 187, which arose under a statute from which ours was substantially copied, seems to affirm both branches of the proposition, and the decision in that case was followed in *Wells* v. *Cahn,* 51 Cal. 423. We think these decisions go too far. Conceding their correctness as to the rights of lien claimants under the statute, it still does not follow that the rule of pleading is as they assume it to be. They give no reason for holding to so strict a rule, and they are professedly based upon earlier California decisions, which went only to the extent of holding that it was a good defense on the part of the owner of the building to show that he had paid the original contractor, in good faith and in pursuance of his contract, before receiving notice of the sub-contractor's claim. (See 13 Cal. 620; 16 Id. 126.) The doctrine of these cases is sufficiently vindicated by allowing to the owner of the building the advantage of his defense, when he himself pleads and proves it.

To hold that the plaintiff and intervenor must aver that he has not paid the original contractor, or that there is still due on the original contract an amount equal to the aggregate of their liens, would be inconsistent with the whole tenor of the law. For, as we have seen, an intervenor is not required to file any complaint or petition of intervention, the evident intention of the law being that his recorded claim shall serve the purpose of a complaint. If, then, a statement of his demand which comes up to the requirements of the statute makes out a *prima facie* case for a lienholder who intervenes in the action, there would seem to be no reason or consistency in requiring the lienholder who commences the action to allege something more. He could not, in any event, be required to make an allegation on the point in question more than sufficiently broad to cover his own claim, and then, if other liens were proved to a greater amount than he had alleged to be due on the original contract (as we have held they might be), the judgment would be open to the same objection which is urged in this case.

Our opinion is that it was the intention of the legisla-

ture to give to material-men and sub-contractors, claiming liens under the law, the benefit of a presumption that contracts made with the original contractor were authorized by the owner of the premises, and, if under the statute, or under the constitution, it is a good defense for the owner to show that he has paid, in good faith and in pursuance of his contract, all that he agreed to pay, before notice of the claims of third parties, he is bound to allege and prove the fact.

The case of *Renton* v. *Conley, supra*, was decided a few months before our present lien law was passed, and the rule is invoked that when a statute of another state has received a construction before its adoption here, it is taken to have been adopted as construed.    We think, however, the rule, even if it had been more strictly adhered to in this state, would scarcely be applicable in this instance; for the case in question, although decided, was not reported before the passage of our law, and it can not be presumed that the legislature was aware of the decision.

The judgment and order of the district court are affirmed.

RESPONSE TO PETITION FOR REHEARING.

By the Court, BEATTY, C. J.:

This case was originally submitted for decision without a very full or satisfactory argument of the main question involved in the last assignment of error discussed in our former opinion.    On account of the important interests depending upon a correct solution of that question we felt unwilling to decide it without a fuller argument, and, believing that the appellant was not entitled under its answer to raise the point, we placed our decision upon that ground. But, a rehearing having been granted, the question alluded to has been thoroughly discussed, not only by counsel for the parties, but also by counsel interested in other cases, and we no longer have any motive to refrain from deciding it.    We are not satisfied that the ground upon which we based the conclusion reached in our former opinion—the insufficiency of appellant's answer—is untenable; but since

it is the earnest desire of all parties that the more important question as to the rights of sub-contractors and material-men should be settled by an authoritative construction of the lien law, and since our understanding of the statute leads us to the same conclusion to which we came before, there will be no occasion to revert to the question of pleading or practice.

The respondents are sub-contractors and material-men, and the law under which they claim (Stats. 1875, 122), is in all essential respects a copy of the California lien law of 1868. (Cal. Stats. 1867–8, 589.) The supreme court of that state, at the October term, 1874, decided that, under their statute, sub-contractors and material-men have no lien except to the extent that the owner of the building is indebted to the principal contractor at the time he receives notice of their claims. (*Renton* v. *Conley*, 49 Cal. 187.) After that decision was made, but before the publication of the volume of reports in which it appears, our legislature adopted the California statute, and upon the authority of *Renton* v. *Conley*, and another case in which it was followed (*Wells* v. *Cahn*, 51 Cal. 423), counsel for appellant claims that our statute must receive the same construction. He claims this upon the grounds: 1. That the California statute was correctly construed in those cases; and 2. That even if *Renton* v. *Conley* was erroneously decided, there is nevertheless a conclusive presumption that our legislature, in adopting the statute, intended it to mean what, in that case, it had been construed to mean.

If the second of these propositions is true, we shall have no occasion to consider the first; for our duty ends with ascertaining and giving effect to the intention of the legislature, and if there is indeed a conclusive presumption that the construction given to the law in *Renton* v. *Conley* was adopted along with the statute, it becomes a mere question of curiosity whether that case was correctly decided. We shall, therefore, inquire in the first place whether we are bound by that decision.

The rule of construction relied on by appellant is a familiar one, so familiar in fact that scarcely a volume of decisions

of the younger states of the Union can be found in which it is not either expressly stated in terms more or less exact or tacitly assumed as the basis of decision. From this very frequency of allusion and statement, it has resulted that the rule and the principle upon which it rests have more than once been expressed in somewhat unguarded terms. But generally, if not always, such looseness of expression has been due to the fact that the circumstances of the particular case did not call for greater exactitude. The rule was neither misunderstood nor misapplied; and it was stated with sufficient precision for the case in hand, though in terms too unqualified for universal application.

As an example in illustration of this statement, we may cite what was said by this court in *McLane* v. *Abrams*, 2 Nev. 206: "It is a rule of construction, too familiar to require the citation of authorities, that where one state adopts the statute of another it is adopted with the construction placed upon it by the highest court of judicature of the state from which it is taken. The reason upon which this rule rests, gives it an importance and weight which should not be disregarded except upon the most urgent reasons. When the legislature of one state adopts the laws of another, it is presumed to know the construction placed upon those laws in the state from which they are adopted, and therefore that it adopts the construction with the law," etc.

Giving to this language its full and literal effect, and supposing it to be subject to no sort of qualification, it clearly sustains the position of appellant. It would follow that we should be absolutely bound by the decision of *Renton* v. *Conley*, even if it had been rendered but a day before and set aside the day after our statute was approved by the Governor. But nothing is better settled than that the language of every opinion is to be understood in a qualified sense—qualified, that is to say, by the facts of the case. It is a decision only upon those facts, and so far as it transcends them is merely *dictum*.

Now, in *McLane* v. *Abrams*, the court was considering a statute which had been copied from the laws of California *verbatim* nine years after it had been construed by the su-

preme court of that state and seven years after the decision had been published in their official reports. In view of these facts the decision in that case lends no support to the position of appellant. It was, indeed, decided by implication that after the construction of a statute has been published for seven years the legislature of another state, adopting the statute, will be presumed to have known such construction. But even this was a question not mooted in the case, and it is clear that all the court intended to decide was that when there is reason to presume that a legislature in adopting the statute of another state knows the construction that has been put upon such statute by the highest courts of the state from which it is borrowed, that construction is presumed to have been adopted along with the statute. Stated in these terms there can be no objection to the rule, and undoubtedly it obtains in this state (see 1 Nev. 537; 2 Id. 206; 5 Id. 24; 7 Id. 27; 8 Id. 320), but subject to at least one important exception, viz: " When the language of a statute is so plain it will admit of but one construction, we can not give it another and absurd one because it has been so construed in another state." (1 Nev. 394.) This exception affords an indication of the limits within which the rule is of any validity. It is resorted to only as a means of discovering the intention of the legislature, and so far only as it conduces to that end is it allowed any force. If the language of a statute leaves no room for construction, its operation is excluded, and so, likewise, it can never be applied where the only reason upon which it rests totally fails.

In this view it becomes important to ascertain the origin and reason of the rule.

As to its origin it is undoubtedly a mere adaptation of the rule of construing statutes that were re-enacted after having been repealed, or after having expired by their own limitations or become obsolete. In such cases there was a natural and just presumption that the legislature was informed of any decision, however recent, of its own highest courts, giving a construction to the law proposed to be re-enacted, and there was a further and very cogent presump-

tion that if it had wished to exclude such construction it would have made the necessary alteration in the terms of the law. Accordingly it has long been settled that when a state re-enacts one of its own laws, substantially in its original terms, the courts of that state will continue to construe the law after its re-enactment as they had construed it before. And they will do this not only because there are the best reasons for supposing that they are thereby conforming to the actual intent of the legislature, but because, so far as their former decision has become to any extent a rule of property, they are bound to adhere to it upon the principle of *stare decisis.*

When, however, a question arises as to the construction of a statute adopted from another state, it is clear that the decisions of that state construing the law derive no additional force from the doctrine of *stare decisis.* They are binding, if binding at all, only because they afford conclusive evidence of the actual intention of the legislature; and it is manifest that they can afford no such evidence unless there are good reasons for presuming them to have been actually known to the legislature when the law was adopted. This consideration is essential to a just appreciation of the rule, and a reference to the language of the earlier cases in which it was applied will show that at first it was constantly borne in mind. Those were cases in which statutes were to be construed that had been adopted in this country after having been in force in England for hundreds of years and their construction settled by long series of decisions.

Under such circumstances, it was eminently just to presume that their construction was known, and therefore adopted along with the statutes themselves.

In *Downey* v. *Hotchkiss,* it was held that the legislature of Connecticut, in adopting the English statute of frauds, also adopted its long-settled construction by the English courts. (2 Day, 225.) In *Kirkpatrick* v. *Gibson,* Chief Justice Marshall said: "I am the more inclined to that opinion because it is reasonable to suppose that where a British statute is re-enacted in this country we adopt the settled

construction it has received, as well as the statute itself."
(2 Brock. 391.) In *Pennock* v. *Dialogue*, Judge Story said:
"It is doubtless true, as has been suggested at the bar,
that where English statutes, such, for instance, as the
statute of frauds and the statute of limitations, have been
adopted into our own legislation, the known and settled
construction of those statutes by courts of law has been con-
sidered as silently incorporated into the acts, or has been
received with all the weight of authority." (2 Peters, 18.)
In *Adams* v. *Field*, the supreme court of Vermont said:
"When our statute of wills was enacted the statute of
Charles II. had received a long, fixed and well-known con-
struction, and when we adopt an English statute we take it
with the construction which it had received, and this upon
the ground that such was the implied intention of the legis-
lature." (21 Vt. 266.) These cases and several others to
the same effect are cited in *Commonwealth* v. *Hartnett*, 3
Gray, 451, where the principle of the rule is thus stated:
"For if it were intended to exclude any known construc-
tion of a previous statute, the legal presumption is that its
terms would be so changed as to effect that intention."

At a later period the principle established by these decis-
ions was invoked in the construction of statutes borrowed
by one state from another, and in the more recent cases a
tendency may be observed to give a wider scope to the
rule and to ignore the wholesome and necessary limitations
under which it was first applied. This, however, is a tend-
ency to be deprecated, and, so far as possible, avoided. It
has probably resulted from the fact that the courts have
found themselves unable to draw any definite line of dis-
tinction between such long-settled constructions as a legis-
lature may reasonably be presumed to know and those more
recent constructions to which no such presumption fairly
attaches. It being once held that a legislature must be
presumed to have known the long-settled construction of a
statute adopted from another state, the rule thence deduced
was naturally invoked in cases where the construction was
more and more recent, and there being no means of fixing a
limit of time within which it could be held that such pre-

sumption would not arise, the operation of the rule has been gradually, and perhaps unavoidably, extended to cases in which it is more likely to have been misleading than otherwise.

But so far as we have observed no court has gone to the extent of holding that the decision of another state can be presumed to be known antecedent to its official publication; and we think that here at least a safe and practical and reasonable limit may be set to the operation of a rule already too much extended. We do not say that we should feel bound to conform to the decision of the highest court of another state merely because it was published in an official report before our adoption of a statute construed by it, but we do feel safe in holding that before such publication there ought to be no presumption that the decision was known to our legislature, and consequently that no inference of their intention can be drawn from any such presumption.

It is certainly true, as contended by counsel for appellant, that no case has been found in which this distinction has been recognized, but this is accounted for by the fact that no case has been found in which the facts warranted a decision based upon any such distinction. We are, however, sustained to this extent by the cases cited below. In frequent instances the courts have taken pains to show by comparison of dates and otherwise that it was reasonable to presume that the previous construction of borrowed statutes was actually known to the legislature by which they were adopted; and in one case, *Campbell* v. *Quinlin*, 3 Scam. 289, some stress was laid upon the fact that the decisions had not only been made but the "reports published to the world" prior to the adoption of the statute in question.

We think we are entirely justified, in view of all the cases, in qualifying the rule at least to the extent above stated. Nor do we anticipate that we shall thereby bring upon ourselves any of the inconveniences suggested by counsel. We are asked how we are to know when a decision is first published, and if we are not aware that they are frequently, if not always, published in the newspapers and in law magazines in advance of the official reports. Our answer is that

the whole subject is one of judicial cognizance. Any application of the rule contended for presupposes judicial knowledge of the date when a decision was rendered, and it is as easy to know judicially when a decision was published in official form as to know when it was rendered, or that it was ever made. As to such ephemeral reports of cases as may be found in newspapers and magazines, it is safer to ignore them altogether than to presume that their contents are known to the legislature.

We refer to the following cases as bearing more or less directly upon the point above discussed: (See cases cited at page 52 of Cooley's Constitutional Limitations; also, *McKenzie* v. *State*, 11 Ark. 596; *Draper* v. *Emerson*, 22 Wis. 150; *Poertner* v. *Russell*, 33 Id. 193; *Harrison* v. *Sager*, 27 Mich. 478; *Greiner* v. *Klein*, 28 Id. 22; *State ex rel. M. and M. Railroad Company* v. *Macon county*, 41 Mo. 464; *Snoddy* v. *Cage*, 5 Texas, 108.)

Upon these authorities, and for the reasons above stated, we say as we said before, that there is no reason to presume that our legislature, when it adopted the California lien law, knew of the construction it had received in *Renton* v. *Conley*, and consequently it can not be presumed that the law was intended to mean what it was there held to mean, unless such intention is fairly deducible from the terms of the statute itself. We are thus brought back to appellant's first proposition, viz.: that the California statute of 1868, from which our statute of 1875 was copied, was correctly construed in *Renton* v. *Conley*.

We regret to say that after a most careful examination of the statute in question, as well as of the whole course of legislation and judicial construction in California on the subject of mechanics' liens antecedent to that decision, we are forced to the conviction that sub-contractors and material-men were thereby deprived of the rights which it was the intention of the legislature to give them.

In discussing the relation of owners of buildings to subcontractors and others, Mr. Phillips, in his work on Mechanics' Liens says : "The protection of the sub-contractor and material-man, with a just regard to the rights of the owner

of the property, has been a subject of much solicitude with most of the legislatures. Two systems seem principally to have been adopted. The one in Pennsylvania, which was the first, where the mechanic who did the work and the material-man who supplied the articles used, were deemed entitled to protection, rather than a mere builder or undertaker of contracts, made provision that the sub-contractor and material-man should have a lien for whatever sum might be due them directly on the building and land upon which it stood, and subordinating the lien of the contractor thereto. The other was the plan adopted in New York, which did not secure to any one except the original contractor an absolute lien on the property for the whole sum due, but by a species of equitable subrogation allowed the sub-contractor and material-man to give written notice to the owner of his unpaid claim, requiring the owner thereupon to retain such funds as were in his hands belonging to the contractor, to answer the suit of the sub-contractor and securing the same either by lien on the interest of the owner in the property, or a right of action against him—the payment of this sum to operate as a valid set-off against any demand of the contractor." (Sec. 57, p. 82.)

A comparison of the statutes and decisions of California on the subject of mechanics' liens gives us the impression that the legislature and supreme court of that state have most of the time since 1858 been acting at cross purposes. By various amendments to the statute the legislature has evinced an intention to establish the Pennsylvania system, but the law has been construed at every stage of its development into a mere embodiment of the New York system. The strong leaning of the court in favor of the latter system has been the result of what is probably an enlightened view of the true policy of legislation on this subject; for it seems that the plan of conferring on sub-contractors and material-men a right of lien for all sums which may be due them, irrespective of payments already made by the owner to the contractor, is passing out of favor, and that the tendency in the later legislation in the various states of the union is to confine their right to what may be

owing by the owners at the time of notice to him of their claims.   (Phillips on Mechanics' Liens, sec. 57.)

But although it may be true that the supreme court of California has at all times had a more just conception than the legislature of what the law ought to be, we can not help thinking that their lively appreciation of the injustice to which owners of buildings might be subjected under the Pennsylvania system has biased their judgment in the construction of the acts of the legislature.

By the first section of the act of 1856 (Cal. Stats. 1856, p. 203), it was enacted that: "All artisans, builders, mechanics, lumber merchants, and all other persons performing· labor or furnishing materials for the construction of any building, wharf, or superstructure, shall have a lien on such building, wharf or superstructure for the work and labor done or material furnished by each respectively."

This section by itself would seem to give to sub-contractors, etc., a direct and absolute lien on the building for the amounts due them; but the provisions of section 3 were perhaps sufficient to justify the supreme court in holding that it was not the design of the legislature to make the owner responsible except upon notice, or to a greater extent than the sum due to the contractor at the date of the notice.   (See *Knowles* v. *Joost,* 13 Cal. 621.)   Section 3 of the act of 1856 was as follows: "On being served with a notice by a sub-contractor as provided in the last preceding section, the owner of such building, wharf or superstructure shall withhold from the contractor out of the first money due, or to become due to him under the contract, a sufficient sum to cover the lien claimed by such sub-contractor, journeyman or other persons performing labor or furnishing materials, until the validity thereof shall be ascertained by a proper legal proceeding if the same be contested; and if so established the amount thereof shall be a valid offset," etc.

But in 1858 this section was amended so as to read as follows: "Every sub-contractor, journeyman, * * * shall, under the provisions of this act, have a valid lien upon the building, wharf or superstructure on which such labor was performed, or for which such materials were furnished, re-

gardless of the claims of the contractor against the owner of such building, etc.; but if any money be due or is to become due under the contract from said owner to said contractor, on being served with notice by a sub-contractor, as provided in the last preceding section, said owner may withhold, out of the first money due, or to become due, under the contract, a sufficient sum to cover the lien," etc.    (Stats. 1858, p. 225.)

To our minds this amendment to the statute clearly indicates the intention of the legislature to make the owner responsible to sub-contractors and material-men for the amount of their claims, notwithstanding previous payment to the contractor of the entire contract price, provided, of course, they complied with the requirements of section 2, as to claiming, recording and serving notice of their liens. The first part of the section is positive to that effect, and the latter part does not qualify it—it merely gives to the owner a means of protection *pro tanto*, in case any portion of the contract price is still due, or to become due.

But, notwithstanding the pointed and stringent terms of this amendment, it was held in *McAlpin* v. *Duncan*, 16 Cal. 126, that it gave no additional rights to sub-contractors and material-men.    The effect of the decision being that the law was left by the amendment exactly as it was before; or, in other words, that the legislature had taken the pains to amend the law without any intention of changing it.    The only argument by which it was attempted to support this conclusion was an enumeration of the grave inconveniences which it was supposed would ensue if the language of the statute should be allowed its natural and obvious effect. This sort of argument is never very conclusive, and its force in this instance is greatly impaired by the fact that several of the states, for the sake of giving more complete protection to mechanics, laborers, etc., have long been contented to endure all the mischiefs involved in what Mr. Phillips calls the Pennsylvania system.

But it is not with the law of 1858, or the case of *McAlpin* v. *Duncan*, that we are particularly concerned.    In 1862 the legislature of California repealed all existing laws on

the subject of mechanics' liens, and passed a new act embodying the New York system and containing specific and ample provisions for giving it full effect. Under that law a number of cases arose in which it was held that all liens were subordinate to the original contract; that the owner could never be compelled to pay more than he had expressly contracted to pay; that if he paid the original contractor according to the terms of his original contract before notice of the claims of sub-contractors, etc., he was absolved to the extent of the payment so made. It is upon these decisions that appellant chiefly relies in its petition for a rehearing. They are, however, entirely inapplicable. No doubt they give a correct construction to the law of 1862 (Stats. 1862, p. 384), but that law bears scarcely a trace of resemblance to the act of 1868 (Stats. 1868, p. 589), by which it was repealed, and under which the case of *Renton* v. *Conley* arose. It seems to us scarcely possible to compare the two acts without being convinced that the intention of the latter was to make a radical change in the existing law and to give to sub-contractors, etc., direct liens for the amounts due them, regardless of the terms of the original contract or of the state of the account between the owner and contractor. It may be that such a law is arbitrary, unjust and impolitic, but the intention of the legislature to so frame it is to our minds clear. This is proved by the fact that although it was modeled upon the law of 1858, it was by no means a mere copy of that law. Various additions and alterations were made, all clearly tending to one purpose, and all evincing the desire of the legislature to obviate the construction placed upon the old law in *McAlpin* v. *Duncan,* and other cases.

For instance, it was enacted in the first section that every mechanic, artisan, lumber merchant, etc., should have a lien for his labor or materials "whether furnished at the instance of the owner of the building or other improvement or his agent," and for the purposes of the act "every contractor, sub-contractor, architect, builder or other person having charge " of the work or improvement was declared to be the agent of the owner.

Again, by section 4 it was enacted that land upon which any improvement was made without the consent or authority of the owner, should be subject to liens for the cost of the improvement, unless the owner, within three days after being informed of the commencement of the improvement, should post a written notice on the premises that he would not be responsible.   Still more significant are the provisions of section 11, which gives to the owner the right to recover back from the contractor any amount which he may be compelled by lienholders to pay "in excess of the contract price."

In all these strongly marked features the law of 1868 differed from that of 1858, and it is a significant circumstance that they were all left out of the code, which was prepared by the code commissioners and adopted by the legislature in 1872.   Those commissioners undertook to provide (Code of Civil Procedure, sec. 1183), that the aggregate amount of liens should never exceed what "the owner would be otherwise liable to pay," and it is evident they thought it necessary to strike out the provisions above referred to in order to make the code consistent with itself.   It is to be presumed this portion of the code was unwittingly adopted by the legislature, for at its next session, in 1874, the amendments of the code commissioners were stricken out and the law of 1868 re-enacted.   (See 2 Hittell's Codes and Statutes, secs. 11,183, 11,192, 11,193.)

After all this industrious changing of the law, *Renton* v. *Conley* was decided upon the assumption that it remained exactly what it had been before.   In this view we are unable to coincide.   On the contrary, we think the language of the statute, without reference to the significant circumstances under which it was amended and re-amended in California, leaves no room for doubt that the legislature intended to give sub-contractors and material-men direct liens upon the premises for the value of their labor and materials, regardless of payments on the principal contract made prior to the time within which the law requires notice of their claims to be recorded.   In support of this conclusion, we refer to *Colter* v. *Frese et al.*, 45 Ind. 97, in which most of the cases

involving the point under discussion are carefully reviewed. Thus, and upon broader grounds, we again conclude that the judgment and order appealed from should be affirmed. It is so ordered.

HAWLEY, J., concurring:

I concur in the judgment of affirmance upon the ground that appellant, having failed in its answer to allege that there was not anything due to the principal contractors at the time of receiving proper notice of the claim of the sub-contractors, is not in a position to raise the material question discussed in the opinion of the chief justice, as to the proper construction of the statute.