PRICE, APPELLANT, *v.* LUSH, RESPONDENT.

ELECTIONS—*Statutory construction—Act of March* 13, 1889, *concerning ballots and voting, construed.*—In the case at bar it appeared that the candidate for an elective office was not nominated by an organized assembly of delegates representing any party or principle; that the certificate of nomination did not state the name or business of the candidate, or the name of the party or principle represented, and was not signed as required by law; that such certificate purported to have been given to fill a vacancy, but did not state any of the facts required under the law in such case, nor was it filed within twenty days before the election. *Held,* that the provisions of the Act of March 13, 1889, are mandatory, and a candidate whose nomination was not made in compliance with such provisions acquired no right to the publication of his candidacy, or the printing of his name on the official ballots, and his election is void. *Held, also,* that a failure to comply with the provisions of said act is not aided by section 15, which allows every voter to write or paste on his ballot "the name of any person whom he desires to vote for."

STATUTORY CONSTRUCTION—*Foreign statutes.*—A statute of a foreign state, which has been adopted by the legislature of this State without provision respecting its interpretation, is to be interpreted and construed according to the construction it has received in the courts of the State where it was enacted, and the intention of the legislature to adopt such construction is implied. (*Wells* v. *Taylor,* 5 Mont. 203, distinguished; *First Nat. Bank* v. *Bell S. & C. M. Co.* 8 Mont. 32, affirmed.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Election contest. Motion to quash the statement of contest was sustained by HUNT, J.

*A. C. Botkin,* for Appellant.

The effect to be given to the provisions of law prescribing the several things to be done before the name of a candidate can be printed upon an official ballot is a question of first impression, so far as the courts of the United States are concerned; but it is obvious from the decisions by the courts of Great Britain and her colonies, that failures to observe them are there held to invalidate the election. (*Gothard* v. *Clarke,* 42 L. T. N. S. 777 [1880], disapproved in 24 Journ. Jurisp. 293; Wigmore's Australian Ballot System, 186; *Reg.* v. *Miller,* 1 Aust. Jur. 56 [Victoria, 1870]; Wigmore, 187; *Zouch* v. *Emprey,* 4 Barn. & Ald. 522; *Ex parte Hurst, In re De Clouet,* 9 Sup. Ct. Rep. [N. S. Wales] 177; Wigmore, 187; *Hawes* v. *Turner,* 1 C. P. D. 670 [1875]; Wigmore, 187, 188.) The primary canon for the construction of statutes is to give effect to their provisions;

never to abrogate them. To hold that an election will stand, notwithstanding all the proceedings respecting the nomination, certification, and publication are in violation of law, would operate as a repeal of some half a dozen sections of the act referred to. (Potter's Dwarris on Statutes, 128, 136, 145, 224, *n.*) The position of the respondent is not helped by the concluding sentence of section 15. That applies only to writing and pasting done by the voter at the time of voting, and does not legalize unlawful proceedings preliminary to the printing of official ballots. The violations of law that are set forth in the statement are not "technicalities" that may be disregarded under the provisions of section 1044 of the fifth division, Compiled Statutes of Montana.

*Gunn & Freeman,* and *McConnell & Clayberg,* for Respondent.

Are the provisions of the act under consideration directory or mandatory? The rule of construction by which this fact is determined is, what did the legislature intend? (§ 630, first div. Comp. Laws; *Lindley* v. *Davis,* 6 Mont. 463.) In statutes of this nature the intent of the legislature is ascertained by applying the following test, which the courts have adopted. If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, then the provisions are mandatory, whether they affect the result of the election or not. But, if as in most cases, the statute provides that certain acts or things must be done within a particular time, or in a particular manner, but does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not affect the result of the election. (McCrary on Elections, 190; *Wells* v. *Taylor,* 5 Mont. 210; *Fowler* v. *State,* 25 Tex. App. 27; Cooley's Constitutional Limitations, 618.) There is not a single word in the language of the act making these provisions mandatory, and it cannot be argued that a failure to comply with their terms would affect the result of the election because under our present system of elections a person may be elected to a public office without being nominated at all. (§ 15, Election Law of 1889.) It follows then, under the rule given above, that these

provisions are directory. But again, applying the rule of construction that statutes *in pari materia* must be construed together, these provisions must be held to be directory, because no other construction would make them consistent with section 1041 of the General Election Law, which provides that the person having the highest number of votes shall be deemed to be elected; and section 1044 which provides that the district judge shall hear and determine all contests in such a manner as shall carry into effect the expressed will of a majority of the legal voters, as indicated by their votes, not regarding technicalities. Also, under the statutory rule (§ 630, first div. Comp. Stats.), that where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to them all, it must be concluded that they are directory, for it is possible to so construe them, and any other construction would make sections 1041 and 1044 of the General Election Law completely nugatory. In brief, applying every rule of construction known to the common law, or established by our statutes, the only reasonable conclusion that can be reached is that these provisions are directory. In view of the great public purposes which election statutes accomplish, it has been the policy of the courts to construe them with great liberality, and to hold that informalities caused either by carelessness or misconduct, which have not affected the result, shall not defeat the election. (Cooley's Constitutional Limitations, 617, 618.) Appellant contends that to hold these provisions directory would operate to repeal half a dozen sections of our election law. If this argument were sound, then the provisions of the statute construed in the case of *Wells* v. *Taylor* were repealed, and such a thing as directory legislation would be unknown to the law. The fallacy of such an argument can readily be perceived. We submit that the decisions cited by appellant should not be considered by this court unless it is shown that the statutes upon which they are based are similar to our own, because there may be provisions in those statutes making them mandatory. Where a foreign statute is adopted, the construction which has been placed upon it should prevail only so far as it is in harmony with the spirit and policy of the general legislation of this State, and should not, if the language of the act is fully susceptible

of another interpretation, be permitted to antagonize other laws in force in this State or to conflict with our settled practice. (Endlich on the Construction of Statutes, 518.)

Appellant's brief in reply.

Upon the question whether the provisions of the statute relative to the nomination, etc., are directory or mandatory, the following authorities may be consulted: *People* v. *Weller*, 11 Cal. 77; *Dodge* v. *Andrews*, 3 C. P. D. 520; *Mather* v. *Brown*, 1 C. P. D. 601; *Monks* v. *Jackson*, 1 C. P. D. 630; *Queen* v. *Jackson*, 3 C. P. D. 11; *Durseyor* v. *Collins*, 6 C. P. D. 460. Where a power is granted or a privilege conferred by a statute the regulations and conditions which it prescribes for their exercise or enjoyment are imperative, and the failure to observe them is fatal. (Endlich on the Construction of Statutes, §§ 438, 454.) When we adopt a statute from another country, the decisions of the courts of that country become authoritative rules of construction. (Sedgwick on Construction, p. 363; *Lindley* v. *Davis*, 6 Mont. 463.) It is only when the meaning is doubtful that consequences may be considered in the construction of statutes. (Potter's Dwarris on Statutes, p. 213.) Arguments drawn from inconvenience or impolicy ought to have little weight. (Potter's Dwarris on Statutes, p. 215.)

BLAKE, C. J.—This is an election contest involving the right of the respondent to the office of justice of the peace.

It is alleged in the statement that Price, the appellant, is a citizen of the United States and the county of Lewis and Clarke, Territory of Montana, and a resident and elector in Marysville precinct, Belmont Township, county aforesaid. That an election was held October 1, 1889, in said township for the office of justice of the peace for the term of three years. "That said L. L. Lush appeared upon the tickets that were voted at said election as a candidate for said office of justice of the peace, as above set forth, and was voted for by the electors of said Belmont Township as a candidate for said office." That the ballots were counted by the judges of election for said precinct and the returns made to the chairman of the board of county commissioners, and that the board of canvassers of said county

canvassed October 16, 1889, the returns and "declared said L. L. Lush duly elected justice of the peace in and for said Belmont Township." That said Lush was not elected a justice of the peace of said township at said election, and was not entitled to hold said office by virtue of said election.

*First* — Said L. L. Lush was not nominated for office of justice of the peace for said Belmont Township in the manner required by law, for the reason that the pretended nomination was not made by any organized assembly of delegates representing any party or principle.

*Second* — The certificate of nomination which was forwarded to the county clerk and recorder of Lewis and Clarke County was not in accordance with the requirements of the statute in this, that said certificate did not contain the name of said Lush; it did not contain his business; it did not designate the name of the party or principle which said convention or primary meeting represented; it was not signed by any person whatever as presiding officer or secretary of said alleged convention or primary meeting; nor was there any name or signature attached to said certificate whatever.

*Third* — Said certificate purported to be a certificate of nomination to fill a vacancy which had happened in the nominations for justices of the peace, but failed to set forth the cause of the vacancy or the name of the person nominated, or the office for which he was nominated, or the name of the person for whom the nomination was to be substituted; nor did it set forth the fact that the committee or any committee was authorized to fill any vacancy.

*Fourth* — Said nomination certificate was not filed within twenty days before the election, being filed on the fourteenth day of September, 1889, and less than sixteen (16) days before the election.

*Fifth* — Because said pretended nomination for the office of justice of the peace was not published by the county clerk of said county in any newspaper within the county of Lewis and Clarke as certified to him under the provisions of the law, and the pretended publication in the Helena Independent of the name of L. L. Lush, as a candidate for said office of justice of the peace, was without authority of law, and unwarranted by

the provisions of the statute, and was in no way authenticated by said county clerk and recorder of said Lewis and Clarke County.

This statement was filed October 19, 1889, in the office of the county recorder November 27, 1889, by the clerk of the court below. Upon the motion of Lush, the statement was quashed as being "insufficient in law," and upon the ground that it did not set forth "a cause of action under the general election law of the State." Judgment was thereupon entered in favor of Lush, and declared that he was "the duly-elected justice of the peace of Belmont Township, Montana."

The sixteenth legislative assembly of the Territory passed a law entitled "An act to provide for printing and distributing ballots at the public expense, and to regulate voting at territorial and other elections," which was approved March 13, 1889. The sections which relate to this inquiry provide substantially: "Section 2. Any convention or primary meeting . . . . held for the purpose of making nominations to public office, and also electors to the number hereinafter specified, may nominate candidates for public office to be filled by election within the Territory. A convention or primary meeting . . . . is an organized assemblage of electors or delegates representing a political party or principle." "Section 3. All nominations made by such convention or primary meeting shall be certified as follows: The certificate of nomination which shall be in writing shall contain the name of each person nominated, his residence, his business, his business address, and the office for which he is named, and shall designate in not more than five words, the party or principle which such convention or primary meeting represents, and it shall be signed by the presiding officer and secretary of such convention or primary meeting, who shall add to their signatures, their respective places of residence, their business, and business addresses. Such certificates made out as herein required shall be delivered by the secretary or president of such convention or primary meeting, to the secretary of the Territory, or to the county clerk as hereinafter required." "Section 4. . . . . Certificates of nomination for county and precinct officers shall be filed with the clerks of the respective counties wherein the officers are to be elected. . . . ." The fifth section

provides that a certificate of the nomination of a candidate for an office, otherwise than by a convention or primary meeting, shall be signed by a certain number of the electors. The sixth section provides that no certificate of nomination shall contain the name of more than one candidate for each office. The seventh section requires the secretary of the Territory and clerks of the several counties to preserve in their offices for one year all certificates of nomination filed therein under this act, and provides that "all such certificates shall be open to public inspection under proper regulations to be made by the officers with whom the same are filed." "Section 8. . . .. . Certificates of nomination herein directed to be filed with the county clerk shall be filed not more than sixty days, and not less than twenty days before the election. . . . ." "Section 10. At least ten days before an election to fill any public office, other than a municipal office, the county clerk of each county shall cause to be published in one or more newspapers within the county the nominations to office certified to him under the provisions of this act. The county clerk shall make such publications daily until the election, in counties where daily newspapers are published. . . . ." The twelfth section provides that if "any certificate of nomination be or become insufficient or inoperative from any cause," the vacancy may be filled in the manner required for original nominations. "If the original nomination was made by a party convention which had delegated to a committee the power to fill vacancies, such committee may, upon the occurring of such vacancies, proceed to fill the same. The chairman and secretary of such committee shall thereupon make and file with the proper officer a certificate setting forth the cause of the vacancy, the name of the person nominated, the office for which he was nominated, the name of the person for whom the new nominee is to be substituted, the fact that the committee was authorized to fill vacancies, and such further information as is required to be given in an original certificate of nomination." This certificate shall have the same force as an original certificate of nomination. "Section 13. When any vacancy occurs before election day and after the printing of the tickets, and any person is nominated according to the provisions of this act to fill such vacancy, the officer whose duty it is to

have the tickets printed and distributed shall thereupon have printed a requisite number of stickers, and shall mail them by registered letter to the judges of election in the various precincts interested in such election, and the judges of election whose duty it is made by the provisions of this act to distribute the tickets shall affix such stickers in the proper place on each ticket before it is given out to the elector."

The statement of contest points out many particulars wherein the foregoing requirements of the statute have not been complied with. Are these provisions directory or mandatory? When this question is decided, the appeal will be determined. The law embraces the leading features of what is termed popularly the "Australian ballot system." The mode of selecting candidates for public trusts at the hands of the people, which has generally prevailed in the United States during the past century, has been revolutionized. The Territory has duly recorded upon her book of laws this legislation, which has been enforced and interpreted in Great Britain and her colonies. The regulations prescribed for the nomination of candidates, which have been stated *supra*, are foreign to American jurisprudence, and the rules of construction relating to elections, which have been correctly expounded in *Wells* v. *Taylor*, 5 Mont. 202, and cases there cited, are not applicable to this controversy. The legislative assembly did not incorporate into the act any provision respecting its interpretation. We must accept then the doctrine which seems to have been announced by the courts of the Union, regarding the construction of the foregoing sections.

In *Pennock* v. *Dialogue*, 2 Peters, 1, Mr. Justice Story says in the opinion: "It is obvious to the careful inquirer that many of the provisions of our Patent Act are derived from the principles and practice which have prevailed in the construction of that of England. It is doubtless true, as has been suggested at the bar, that where English statutes, such, for instance, as the Statute of Frauds and the Statute of Limitations, have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority." (See, also, *McDonald* v. *Hovey*, 110 U. S. 628; *Allen* v. *St. Louis Bank*, 120 U. S. 34; *Metro-*

*politan R. R. Co.* v. *Moore*, 121 U. S. 572; *Hunter* v. *Truckee Lodge*, 14 Nev. 24; *Pratt* v. *American B. T. Co.* 141 Mass. 225; 55 Am. Rep. 465.)

In *Commonw.* v. *Hartnett*, 3 Gray, 450, Mr. Justice Metcalf for the court says: "We do not suppose that any English statutes for the punishment of larceny were ever held to be in force in Massachusetts. (7 Dane Abr. 168.) Yet the provisions of some of them, and the provisions of acts of Parliament for the punishment of other offenses, have been enacted by our legislature in every stage of our history. And in such cases (as well as in cases where English statutes respecting civil concerns have been enacted here), it has always been held that the construction previously given to the same terms by the English courts is the construction to be given to them by our courts. It is a common learning that the adjudged construction of the terms of a statute is enacted, as well as the terms themselves, when an act which has been passed by the legislature of one State or country is afterwards passed by the legislature of another. . . . . For, if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effect that intention." The case of *Commonw.* v. *Hartnett, supra,* was followed in *Commonw.* v. *Taylor*, 132 Mass. 261, and the court asserts that certain statutes "were passed, adopting substantially the same language as the English statute, and if there were nothing more to aid in ascertaining the intention of the legislature, the presumption would be strong that it was intended to adopt the same construction which had been given to the statute in England."

In *Adams* v. *Field*, 21 Vt. 256, the court holds: "When we adopt an English statute, we take it with the construction which it has received, and this upon the ground that such was the implied intention of the legislature." This court, in *First Nat. Bank* v. *Bell S. & C. M. Co.* 8 Mont. 32, carried into effect this principle of interpretation concerning a statute, which had been passed originally in the State of California, and adopted subsequently by the Territory.

The courts of England have always held that the statutory requirements, *supra*, are mandatory. In the case of *Queen* v. *Parkinson*, L. R. 32 Q. B. 11, which was decided in 1867, it

appears from the information that "the defendant was nominated in writing for one of the vacant offices (town councilor) by one William Whiting, and that Whiting was not entitled to vote at the election of councilors for the Minster Ward, in respect of which he assumed to make the nomination, nor was he on the burgess roll of the Saint Mary Ward. That the defendant was not nominated as by the statute is required, and by reason thereof was not duly elected a councilor." Judgment was entered for the Crown, and Chief Justice Cockburn in the opinion said: "The section clearly requires that the person nominating should be entitled to vote at the election for which he nominates, whether it be for the whole borough, if not divided into wards, or for a particular ward, when the borough is divided."

In 1876 the case of *Mather* v. *Brown*, L. R. 1 C. P. D. 596, was determined, and Lord Coleridge, C. J., said: "The question arises thus: At the last election of town councilors for Southport, the petitioner was nominated as a candidate, and the nomination paper was in all respects in proper form and duly delivered, except that it was not signed with the full Christian name of the candidate, who had signed it 'Robert V. Mather,' his second Christian name being Vicars; and the question is whether that is a fatal objection. The objection was taken in proper time, and was overruled by the mayor. I feel obliged to hold that the objection was a good one, and ought to have been allowed. The Municipal Elections Amendment Act which passed last year (38 & 39 Vict. ch. 40), directs, amongst other things, that the nomination paper shall state the surname and other names of the persons nominated, according to the form given in the second schedule. . . . . I repeat that I yield to the objection with great reluctance. . . . . It must be remembered that, in dealing with cases under these acts, we are sitting as a final tribunal of appeal, in the exercise of a duty cast upon us under peculiar circumstances, and as a sort of compromise between conflicting parties in the legislature, and, therefore, are more especially bound to keep ourselves strictly within the letter of the acts, and to abstain from any attempt to strain the law."

In *Howes* v. *Turner*, L. R. 1 C. P. D. 670, Mr. Justice Brett

says : " The material facts are these : The notice given by the town clerk, under section 1 of the Municipal Elections Act, 1875 (38 & 39 Vict. ch. 40), was a bad notice ; though issued in proper time, it gave notice that nomination papers of candidates at the forthcoming election of councilors were to be delivered to him on Saturday, the 23d of October, whereas they should have been delivered to him on the 22d. . . . . Here it is clearly proved that one of the candidates was misled by the error in the notice, an error which even a skillful person might well have committed. It is impossible to say which of the candidates would have been elected if that mistake had not occurred. It seems to me, therefore, that such a defect as has had that result is fatal, and on that ground I think we ought to hold this notice to be so bad as to have rendered the whole election void, and under the circumstances to have disqualified the successful candidate from being elected." The candidate who was thus misled delivered his nomination paper to the town clerk " Saturday, the 23d, which was not in proper time."

In *Monks* v. *Jackson*, L. R. 1 C. P. D. 683, it appeared that the nomination papers of certain candidates were delivered to the town clerk by the agent of the petitioners and their proposers and seconders. The statute requires the nomination papers to " be delivered by the candidate himself, or his proposer or seconder, to the town clerk." Lord Coleridge, C. J., said : " I am clearly of opinion that (this statute) is imperative, and not merely directory. . . . . And, it appearing on the face of the case that the petitioners were not duly nominated, there is no ground for questioning the election of the respondents." (*Burgoyne* v. *Collins*, L. R. 82 Q. B. 452.)

In the work of Wigmore on Australian Ballot System, pages 186, 187, second edition, we find the following notes of decisions which are reported in volumes that are not at our command: " A nomination made by persons 'not entitled to vote,' because of taxes unpaid is not valid, even though at a previous election they were qualified and voted. (*Ex parte Drew*, 9 Sup. Ct. Rep. [N. S. Wales], 169.)" " A nomination paper was not filed until after 4 P. M., the prescribed time, on the day of nomination. *Held*, that the election was void, though no other person was nominated. (*Reg.* v. *Miller*, Aust. Jur. [Victoria, 1870], 56.)"

"A statute required that nominations be filed 'seven days at least' before election day. *Held*, that this required 'seven clear days to intervene, exclusive of the days of election and nomination.' (*Ex parte Hurst, In re De Clouet*, 9 Sup. Ct. Rep. [N. S. Wales], 177.)" "A statute provided that 'whenever any day provided or appointed by or under this act for any purpose shall in any year happen on a Sunday, New Year's Day, etc., or any day proclaimed as a holiday, then such provision and appointment shall take effect as of the following day.' The last day for filing nominations fell on a Sunday; on Saturday nominations had been made for all vacancies, but on Monday further nominations were accepted. *Held*, that these were invalid, that statute applying only where a single day was specified for an event, and not where Sunday was one of several days on which an act might be done. (*Reg.* v. *Hennessy, Ex parte Knight*, 5 Aust. Jur. [Victoria, 1874], 35.)" Mr. Paine considers this matter in his Treatise on Elections, and observes: "The proceedings of an election, in England, commence with the nomination of candidates. The nomination is no longer made *viva voce*, in public, but in writing, in the designated room where the returning officer attends, on the day and at the hour specified in the notice. . . . . The nomination papers may be delivered to the returning officer during the two hours fixed for the election, and not afterwards. No person nominated after the expiration of the two hours, will be entitled to have his name inserted in the ballot papers." (P. 427.)

We assume upon this hearing that the facts which are properly pleaded in the statement of the contest have been established. The force of these authorities which construe the English statutes that have been adopted partially by our legislative department must be recognized. The principle which has called into being this law, that prescribes the conditions for the nominations of candidates for office before the day of election, demands the enforcement of every provision. We are compelled to hold that the respondent was not nominated for the office of justice of the peace of Belmont Township in the manner fixed by the statute, and that his name should not have been published in the Helena Independent, or printed on the official ballot as a candidate therefor. The specifications which are contained in

the statement support these propositions. The publication of the candidacy of the respondent, and the printing of his name upon the ballot, gave him a position and advantage, which the law declares he shall not enjoy. If any person has not been nominated in a legal manner, or if the notification of his nomination has not been filed within the period named in the statute, he can announce to the public that he is a candidate for an office. The fifteenth section allows every voter to write or paste on his ballot "the name of any person whom he desires to vote for," but the respondent is not aided by this provision.

Our conclusion is that the election of the respondent should be adjudged void, but we cannot direct that a final judgment be entered. It is therefore ordered and adjudged that the judgment be reversed with costs, and that the cause be remanded, with instructions to overrule the motion of the respondent to quash the statement of the contest.

HARWOOD, J., and DE WITT, J., concur.